IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TRUE NORTH ENTERPRISES, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 13 C 8776 |
| | ) |
| JOHN W. HENDRICKS, JR., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant John W. Hendricks, Jr.'s (Hendricks) motion to dismiss and motion in the alternative to stay. For the reasons stated below, the motion to dismiss is granted, and the alternative motion to stay is stricken as moot.

## BACKGROUND

Plaintiff True North Enterprises, LLC (True North) alleges that it is a private equity firm that invests in a variety of businesses. True North contends that in 2012, it became interested in purchasing Luck E Strike, a Missouri corporation that manufactures and distributes fishing lures. True North asserts that on December 21, 2012, it entered into a stock purchase agreement with Hendricks (2012 SPA), in

1

which True North purchased what Hendricks represented to be seventy percent of the stock in Luck E Strike.  In relation to the 2012 SPA, Hendricks allegedly provided True North with Luck E Strike's financial statements for the twelve-month periods ending in August 31, 2011 and August 31, 2012.  True North and Hendricks also allegedly entered into an employment agreement in which Luck E Strike agreed to continue Hendricks' employment as Luck E Strike's president.

Approximately two months after the execution of the 2012 SPA, True North allegedly began to have concerns about Hendricks' employment at Luck E Strike.  In or around April 2013, True North, as majority shareholder of Luck E Strike, allegedly began discussing Hendricks' terms of resignation, and subsequently decided to purchase his remaining equity in Luck E Strike.  In anticipation of the transaction, Hendricks allegedly provided True North with the March 2013 Balance Sheet showing the assets and liabilities of Luck E Strike.  Approximately five months after the execution of the 2012 SPA, True North and Hendricks allegedly executed a second stock purchase agreement on May 7, 2013 (2013 SPA), in which True North purchased Hendricks' remaining thirty percent of stock in Luck E Strike.  True North claims that it has since discovered that Hendricks allegedly made certain misrepresentations in the 2013 SPA and the March 2013 Balance Sheet.

True North includes in its complaint a breach of contract claim alleging misrepresentations regarding claims against Luck E Strike (Count I), a breach of contract claim alleging misrepresentations regarding percentage ownership (Count II), a breach of contract claim alleging misrepresentations regarding transferability of

shares (Count III), a fraud claim alleging misrepresentations regarding claims against Luck E Strike and stock ownership (Count IV), a fraud claim alleging misrepresentations regarding Luck E Strike's financial condition (Count V), and a claim for declaratory relief (Count VI). Hendricks now moves to dismiss all claims or, in the alternative, to stay the instant action.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(1) (Rule 12(b)(1)) requires a court to dismiss an action when it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1); *see also Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995)(stating that when reviewing a motion to dismiss brought under Rule 12(b)(1), the court "must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff"). When subject matter jurisdiction is not apparent on the face of the complaint and is contested, "the district court may properly look beyond the jurisdictional allegations of the complaint . . . to determine whether in fact subject matter jurisdiction exists." *Sapperstein v. Hager*, 188 F.3d 852, 855-56 (7th Cir. 1999)(internal quotations omitted)(quoting *United Transportation Union v. Gateway Western Railway Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996)). The burden of proof in regards to a Rule 12(b)(1) motion is on the party asserting that the court has subject matter jurisdiction. *Id.*

In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations

of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir. 2012); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). A plaintiff is required to include allegations in the complaint that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'" and "if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)(quoting in part *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)); *see also Morgan Stanley Dean Witter, Inc.*, 673 F.3d at 622 (stating that "[t]o survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged")(quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009))(internal quotations omitted)**.**

## DISCUSSION

I. Breach of Contract Claims (Counts I-III)

Hendricks contends that True North has failed to state a breach of contract claim and that the court lacks subject matter jurisdiction over such claims. True

4

North alleges that Hendricks materially breached the 2013 SPA in making certain misrepresentations. (Compl. Par. 1). Under Illinois law, the elements of a breach of contract claim are: "(1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages." *Ass'n Ben. Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 849 (7th Cir. 2007)(citing *MC Baldwin Fin. Co. v. DiMaggio, Rosario & Veraja, LLC*, 845 N.E.2d 22, 30 (Ill. App. Ct. 2006)). Hendricks does not contest that the 2013 SPA was a valid and enforceable contract.

### A. Claims Relating to Luck E Strike

Hendricks argues that Count I should be dismissed for failure to state a claim "in light of the unambiguous meaning of the subject contract." (MTD 1). True North claims in Count I that Hendricks materially breached the 2013 SPA in making misrepresentations regarding existing potential claims against and affecting Luck E Strike. (Compl. 13). More specifically, True North alleges that pursuant to Section 3.4 of the 2013 SPA, Hendricks "represented and warranted that 'there are no . . . claims, at law or in equity, or before or by any Person pending or, to the Knowledge of the Seller, threatened against or affecting [Luck E Strike] . . . .'" (Compl. Par. 68). True North has allegedly discovered the following undisclosed claims against and affecting Luck E Strike:

> a) Dan E. Angel, an individual residing in Missouri, alleges that he owns 2.5% of the outstanding shares in Luck E Strike and has demanded that Luck E Strike provide him with an accounting of Luck E Strike's internal records;

> b) L.S. Kei Corporation, one of Luck E Strike's suppliers, has claimed that it is owed $82,450 in freight charges dating back to 2011;
> c) DSL Worldwide also has claimed that it is owed $21,450 in freight charges dating back to 2011;
> d) Gary Schreiner has claimed that he is owed $150,000 in connection with certain manufacturing equipment, which Hendricks represented to be owned by Luck E Strike free and clear of all liens; and
> e) Katchmor Co. has claimed that it is owed certain royalties for products sold by Luck E Strike in connection with a patent that Luck E Strike purchased from Katchmor Co.

(Compl. Par. 51(a)-(e)). True North further alleges that Hendricks "knew, or should have reasonably discovered 'after reasonable inquiry and investigation,'" of the existence of these claims against and affecting Luck E Strike. (Compl. Par. 69).

The court may consider the terms of the 2013 SPA in ruling on the motion to dismiss because the 2013 SPA is referenced in the complaint and is attached to the complaint as an exhibit. Fed. R. Civ. P. 10(c); *see Citadel Group Ltd. v. Washington Regional Medical Center*, 692 F.3d 580, 591 (7th Cir. 2012)(holding that "[i]n deciding a motion to dismiss for failure to state a claim we may consider documents attached to or referenced in the pleading if they are central to the claim"). True North has pointed to the language in Section 3.4 of the 2013 SPA, which states:

> **3.4 Litigation.** Except (I) as set forth in **Schedule 3.13** to the Stock Purchase Agreement dated as of December 21, 2012 by and between Buyer and Seller, and (ii) for that pending action brought by Keith Pouche… there are no *actions, suits, proceedings, charges, complaints*, orders, writs, injunctions, judgments, decrees, investigations, or claims, at law or in equity, or before or by any Person pending or to the Knowledge of the Seller, threatened against or affecting the Company, this Agreement or any of the Transaction Documents, or the transactions contemplated hereby or thereby.

(MTD Mem. 7); (Compl., Exhibit C, Sec. 3.4)(emphasis added).

Hendricks contends that Section 3.4 of the 2013 SPA "contemplates disclosures of *litigation* or other formal proceedings." (MTD Mem. 7)(emphasis in original). Hendricks asserts that the choice of language in Section 3.4 of the 2013 SPA "stands in juxtaposition to Section 3.5 of the 2012 SPA," which states:

> **3.5 Absence of Undisclosed Liabilities**. To the Knowledge of the Seller, the Company has no material debts, liabilities or obligations of any nature (whether accrued or not, absolute or contingent, liquidated or unliquidated, due or to become due, known or unknown, asserted or unasserted, determined or determinable, or otherwise) except for (a) liabilities reflected and reserved against in the Reviewed Financial Statements; and (b) current liabilities that have arisen after August 31, 2012 in the Ordinary Course of Business. There are currently no accrued, cumulated or accumulated and unpaid dividends or other distributions with respect to any of the Equity Interests of the Company.

(MTD Mem. 7); (Compl., Exhibit A, Sec. 3.5).

In response, True North contends that "Section 3.4 simply covers Hendricks' obligation to disclose claims against and affecting Luck E Strike through different language than the 2012 SPA," and that "[n]o rule of contract interpretation requires that parties use the same words in different agreements to express similar concepts." (Ans. 9). However, the Seventh Circuit has stated that "[w]here the allegations of a pleading are inconsistent with the terms of a written contract attached as an exhibit, the terms of the latter, fairly construed, must prevail over the averments differing therefrom," and that "[a] plaintiff may plead himself out of court by attaching

7

documents to the complaint that indicate that he or she is not entitled to judgment."
*Ogden Martin Systems of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523, 529 (7th Cir. 1999). The plain language of Section 3.4 of the 2013 SPA clearly refers to "actions, suits, proceedings, charges, complaints, . . . or claims" which relate to litigation, as indicated by the title of Section 3.4 of the 2013 SPA: "**Litigation.**" (Compl., Exhibit C, Sec. 3.4). True North has not alleged facts to suggest that Hendricks failed to disclose such matters relating to litigation. Based on the above, True North has failed to state a breach of contract claim relating to Hendricks' awareness of any existing potential claims against Luck E Strike, as defined by Section 3.4 of the 2013 SPA. Therefore, Hendricks' motion to dismiss is granted with respect to Count I.

B.  Percentage Ownership

Hendricks argues that Count II should be dismissed for want of subject matter jurisdiction because it is based on hypothetical issues and is "not ripe for adjudication." (MTD 1). True North claims in Count II that Hendricks misrepresented the percentage of his ownership of Luck E Strike stock. (Compl. 13-14). More specifically, True North alleges that "[p]ursuant to the Recitals of the 2013 SPA, Hendricks represented that he owned 30% of the stock of Luck E Strike."

(Compl. Par. 74). In addition, True North alleges that "at least one individual claims to own a 2.5% minority position in Luck E Strike that would dilute the percentage of Hendricks' ownership." (Compl. Par. 75). True North further alleges that "[i]f that claim is valid, Hendricks' representation regarding the percent of stock he owned would be false and would constitute a material breach of the 2013 SPA." (Compl. Par. 76). True North asserts that "it would not have entered into the 2013 SPA" had it known that "it may not be purchasing the entire remaining equity interest of Luck E Strike." (Compl. Par. 77). Thus, the court must first determine whether the claim in Count II is ripe for review. *See also Wisconsin's Environmental Decade, Inc. v. State Bar of Wisconsin*, 747 F.2d 407, 410 (7th Cir. 1984)(stating that "[u]nder Article III of the Constitution, federal courts may only adjudicate 'cases or controversies' and may not render advisory opinions").

In determining ripeness, the Seventh Circuit has held that "[c]ases are unripe when the parties point only to hypothetical, speculative, or illusory disputes as opposed to actual, concrete conflicts." *Hinrichs v. Whitburn*, 975 F.2d 1329, 1333 (7th Cir. 1992); *see Marusic Liquors, Inc. v. Daley*, 55 F.3d 258, 260 (7th Cir. 1995)(stating that "[a] claim is unripe when critical elements are contingent or unknown"). The whole premise of Count II involves a third-party claim which, True North alleges "*if* . . . valid," would dilute the percentage of Hendricks' ownership. (Compl. Par. 75-76)(emphasis added). Such a claim is unripe as True North has only

9

pointed to hypothetical or speculative conflicts. *See Hinrichs*, 975 F.2d at 1333.

True North contends that the claims are ripe because it "is seeking damages for the difference in what it believed Luck E Strike was worth, based on Hendricks' misrepresentations, as opposed to its actual value." (Ans. 11). Based on the above, True North has failed to state a claim ripe for adjudication. Therefore, Hendricks' motion to dismiss is granted with respect to Count II.

C.  Transferability of Shares

Hendricks argues that Count III should similarly be dismissed for want of subject matter jurisdiction based on hypothetical issues and unripeness. (MTD 1). True North claims in Count III that Hendricks misrepresented the transferability of his stock. (Compl. 14). More specifically, True North alleges that "[p]ursuant to Section 3.3 of the 2013 SPA, Hendricks represented that there were no restrictions on his ability to transfer his shares." (Compl. Par. 82). True North claims that it has "discovered an unsigned shareholder agreement, . . . that, if valid, could restrict Hendricks' transfer rights." (Compl. Par. 83). True North further alleges that "[i]f valid," the existence of such an agreement "would render false Hendricks' representations regarding the transferability of his stock set forth in Section 3.3 of the SPA." (Compl. Par. 84).

Again, True North's claims hinge on whether the newly discovered unsigned

shareholder agreement as it relates to Hendricks is valid in the first place, in which case it "could" restrict his transfer rights. (Compl. Par. 83). As stated above, True North's claims are clearly hypothetical. Based on the above, True North has failed to state a claim ripe for adjudication. Therefore, Hendricks' motion to dismiss is granted with respect to Count III.

II. Fraud Claims (Counts IV-V)

    A. Claims Against Luck E Strike and Stock Ownership

Hendricks argues that Count IV should be dismissed for failure to state a claim because it fails to describe the alleged fraud with the particularity required under Federal Rule of Civil Procedure 9(b) (Rule 9(b)). (MTD 1), (MTD Mem. 15). In addition, Hendricks argues that Count IV should be dismissed because "common law fraud cannot be based on representations that have been expressly made in a contract." (MTD 2). True North claims in Count IV that Hendricks made certain misrepresentations regarding claims against Luck E Strike and stock ownership. (Compl. 15). Specifically, True North claims: (1) that Hendricks made certain statements of material fact that he "knew or believed to be false" regarding Luck E Strike, (2) that Hendricks "intended to induce" True North to rely on those statements, (3) that True North "reasonably relied" on such statements when it purchased Hendricks' shares of Luck E Strike, and (4) that True North "was

11

damaged" by its reliance on Hendricks' representations. (Compl. Par. 90-93).

Rule 9(b) requires a plaintiff alleging fraud to "state with particularity the circumstances constituting fraud," which "ordinarily requires describing the 'who, what, when, where, and how' of the fraud." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011)(citations omitted); *see also* Fed. R. Civ. P. 9(b)(stating that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake"). True North alleges that Hendricks made the following statements regarding Luck E Strike that he knew or believed to be false: (a) "[t]hat, except as expressly disclosed, there were no claims against or affecting Luck E Strike, where there were many undisclosed claims," and (b) "that Hendricks owned 30% of the equity in Luck E Strike, which was freely conveyable, when that may not be the case." (Compl. Par. 90(a),(b)). True North fails to allege to whom the statements were made, when they were made, where they were made, or how they were made. Thus, such allegations do not include the who, when, where, or how regarding the alleged misrepresentations. Therefore, they do not meet the heightened pleading requirements of Rule 9(b).

To the extent that True North is attempting to point to the language of the 2013 SPA to support its fraud claim, representations which constitute part of the actual contractual agreements between the parties cannot be used to support a fraud claim. *See Desnick v. Am. Broad. Companies, Inc.*, 44 F.3d 1345, 1354 (7th Cir.

1995)(cautioning against the "risk of turning every breach of contract suit into a fraud suit"); *see also Perlman v. Zell*, 185 F.3d 850, 852 (7th Cir. 1999)(stating that "[b]reach of contract is not fraud"). Based on the above, True North has failed to state a fraud claim for Count IV. Therefore, Hendricks' motion to dismiss is granted with respect to Count IV.

### B. Luck E Strike's Financial Condition

Hendricks argues that Count V is "based on alleged misrepresentations relating to Financial Statements that were attached to the 2012 SPA, and therefore must be addressed in the Arbitration pursuant to the mandatory arbitration clause in the 2012 SPA." (MTD Mem. 8). True North claims in Count V that Hendricks made certain misrepresentations regarding Luck E Strike's financial condition. (Compl. 15). Specifically, True North claims: (1) that Hendricks "made statements of material fact in the March 2013 Balance Sheet that he knew or believed to be false regarding the value of certain assets and liabilities of Luck E Strike (inventory, prepaid inventory, accounts receivables, other personal property, and account payable)," (2) that Hendricks "intended to induce True North to rely on" those statements, (3) that True North "reasonably relied" on such statements when it purchased Hendricks' shares of Luck E Strike, and (4) that True North "was damaged" by its reliance on Hendricks' representations. (Compl. Par. 95-98).

13

Additionally, the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, provides "that a written provision in any contract evidencing an intent to settle by arbitration any future controversy arising out of such contract shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *French v. Wachovia Bank*, 574 F.3d 830, 834 (7th Cir. 2009)(internal quotations omitted)(quoting *Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 556 (7th Cir. 2003) and 9 U.S.C. § 2). Accordingly, "courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *Gore v. Alltel Communications, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012)(quoting *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011)); *see Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 662 (7th Cir. 2002)(stating that "[t]o determine whether a contract's arbitration clause applies to a given dispute, federal courts apply state-law principles of contract formation").

When parties enter into multiple agreements, and "only one contains an arbitration clause, and the plaintiff brings a cause of action based, at least in part, on conduct contrary to the agreement that does not have the arbitration clause, the parties can be compelled to arbitrate only if (1) the clause itself is broad enough to encompass their dispute, or (2) the agreement containing the clause incorporates the other[(s)] by reference." *Gore*, 666 F.3d at 1033. Moreover, when an arbitration agreement contains a broad arbitration provision, "there is a presumption in favor of

arbitrability," and "[a]ny ambiguities as to the scope of the arbitration clause are resolved in favor of arbitration." *United Steel, Paper and Forestry, Rubber, Mfg., Energy, Allied Indus. and Service Workers Intern. Union v. TriMas Corp.*, 531 F.3d 531, 536 (7th Cir. 2008)(internal quotations omitted); *see also Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Intern., Ltd.*, 1 F.3d 639, 642 (7th Cir. 1993)(stating that the Court should "[b]ear[] in mind the Supreme Court's instruction that 'any doubt concerning the scope of arbitrable issues should be resolved in favor of arbitration'")(quoting in part *Moses H. Cone Mem. Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 24-25 (1985)); *Miller v. Flume*, 139 F.3d 1130, 1136 (7th Cir. 1998)(stating that "once it is clear the parties have a contract that provides for arbitration of some issues between them, any doubts concerning the scope of the arbitration clause are resolved in favor of arbitration").

In its response, True North contends that "with respect to Count V, Hendricks could have misrepresented the March 2013 Balance Sheet without necessarily misrepresenting the financial statement representations attached to the 2012 SPA, which were separate documents based on a different period of time." (Ans. 17). However, even accepting as true the allegations in True North's complaint that it "rel[ied] on the accuracy of the March 2013 Balance Sheet in entering into the 2013 SPA," (Compl. Par. 40), True North also alleged that the March 2013 Balance Sheet was "identical in format," "prepared by the same purportedly independent third party

accounting firm," and "[o]ther than some variations in the value of these assets and liabilities, . . . was generally consistent with" the balance sheet in the Financial Statements accompanying the 2012 SPA. (Compl. Par. 35-38). The 2012 SPA contains a mandatory arbitration clause covering solely that contract and is therefore limited in scope. However, based on the above, True North has failed to remove any doubt that arbitration clause in the 2012 SPA governs. Therefore, Count V of True North's complaint is dismissed in favor of arbitration.

III. Claim for Declaratory Relief (Count VI)

Hendricks argues that Count VI should be dismissed under the doctrine of *forum non conveniens* because of a forum selection clause in the promissory note (Note) requiring that related claims be litigated in a court with jurisdiction in Barry County, Missouri. (MTD 2). True North claims in Count VI that it is entitled to a declaratory judgment against Hendricks. (Compl. 16). However, in its response, True North asserts that "[d]espite referencing the Note," the 2013 SPA is the "central issue" of its claim. (Ans. 18-19). Accordingly, the declaration which True North seeks in Count VI is based on Hendricks' alleged "obligations under the 2013 SPA." (Ans. 18). As stated above, True North has failed to state a breach of contract claim relating to the 2013 SPA against Hendricks. Therefore, Hendricks' motion to dismiss is granted with respect to Count VI. Hendricks requests in the alternative

16

that the court stay the instant action. (MTD 1). Since the court has granted Hendricks' motion to dismiss in its entirety, his motion to stay is stricken as moot.

## CONCLUSION

Based upon the foregoing analysis, Hendricks' motion to dismiss is granted as to Counts I, II, III, IV, and VI, and Count V is dismissed in favor of arbitration. Hendricks' alternative motion to stay is stricken as moot.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: April 30, 2014